**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| THE NORTHERN TRUST COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>LUND MILLS HEDGES,<br><br>    Defendant.<br><hr>LUND MILLS HEDGES,<br><br>    Third-Party Plaintiff,<br><br>    v.<br><br>LJH GLOBAL INVESTMENTS, L.L.C.;<br>N1LJH, LTD., and JAMES R. HEDGES IV,<br><br>    Third-Party Defendants. | No. 07 C 5592<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

**I.    Introduction**

Plaintiff is The Northern Trust Company, an Illinois banking corporation ("Northern Trust"). Defendant Lund Mills Hedges is an individual citizen of Florida. Northern Trust has asserted three claims pertaining to notes and personal guarantees executed by Defendant and her ex-husband: breach of contract (Count I) and breach of personal guarantees (Counts II and III). Defendant responded with several affirmative defenses, a counterclaim, and a Third-Party complaint against her ex-husband, Mr. Hedges, LJH Global Investments, L.L.C. ("Global"), and N1LJH, Ltd. ("N1LJH"). Northern Trust subsequently filed a motion to strike several of

Defendant's affirmative defenses and a motion to dismiss Defendant's counterclaim. Third-Party Defendants have filed a motion to dismiss Defendant's Third-Party complaint.

Before me are: Northern Trust's motion to strike Defendant's fourth through sixth affirmative defenses (failure of consideration, laches, and breach of covenant of good faith), Northern Trust's motion to dismiss Defendant's counterclaim for an accounting, and Third-Party Defendant's motion to dismiss Defendant's Third-Party complaint for joint and several liability, indemnification, and contribution.

For the reasons stated below, Northern Trust's motion to strike Defendant's fourth through sixth affirmative defenses is granted. Northern Trust's motion to dismiss Defendant's counterclaim is also granted. Third-Party Defendants' motion to dismiss Defendant's Third-Party complaint is granted with respect to Global and N1LJH and denied with respect to Jim Hedges.

## II. Statement of Facts

On October 1, 2003, Defendant and Mr. Hedges signed a personal guaranty securing a $1,662,644 loan that Northern Trust gave Mr. Hedges' company, Global. Several months later, on December 31, the couple executed another personal guaranty for a $1,729,500 loan made by Northern Trust to Mr. Hedges' other company, N1LJH. Global and N1LJH have failed to make payments, and Northern Trust has filed breach of personal guaranty claims against Defendant to recover the value of the loans (Counts II and III).

Approximately one year later, on December 31, 2004, Defendant and Mr. Hedges jointly executed a Master Note payable to Northern Trust in the amount of $5,067,740 ("Hedges Note"). Northern Trust asserts that Defendant and her ex-husband remain in default on the loan despite

the bank's demands for payment. Northern Trust filed a breach of contract claim against Defendant for the unpaid balance of the Hedges Note (Count I).

On June 30, 2006, Defendant and Mr. Hedges divorced, and a court of the Twentieth Judicial Circuit of Florida entered a Final Judgment of Dissolution of Marriage and Other Relief (the "Divorce Judgment"). The divorce judgment is final and non-appealable, and sets out the various obligations of Defendant and her ex-husband. Relevant here is section 33, which provides that "[t]he parties shall equally divide the debt in the approximate amount of $8,500,000 to Northern Trust." Divorce Judgment at 16, ¶ 33. Defendant and Mr. Hedges were each responsible for one-half of the obligations to Northern Trust, including the Hedges Note and both personal guarantees.

Mr. Hedges, Global, and N1LJH have entered into forbearance agreements with Northern Trust and have adopted a specific time schedule for repayment of their shares of the debt. Defendant has not reached a similar arrangement with Northern Trust concerning her debt. Northern Trust has therefore sued Defendant for the entirety of the obligations under the Hedges Note and the personal guarantees. Defendant seeks to implead her ex-husband as a joint obligor for his half of the Hedges Note. She also seeks indemnification and contribution from Global and N1LJH, asserting that they are the primary obligors.

### III. Standards of Review

A court may strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). This district has adopted a three-part test for examining motions to strike affirmative defenses. *Van Schouwen v. Connaught Corp.*, 782 F.Supp. 1240, 1245 (N.D. Ill. 1991). First, the Court must "determine

3

whether the matter is appropriately pleaded as an affirmative defense." *Id.* Next, the affirmative defense must meet the requirements of Rules 8 and 9 of the Federal Rules of Civil Procedure. *Id.* Lastly, the defense must withstand a Rule 12(b)(6) examination. *Id.*

"The recognized standard for reviewing the grant of a motion to dismiss for failure to state a claim is whether 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Mescall v. Burrus*, 603 F.2d 1266, 1269 (7th Cir. 1979) (*quoting Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Though the Court must interpret all factual allegations and inferences in a light most favorable to the moving party, it is not required to accept legal conclusions. *Id.*

## IV. Discussion

### A. *Northern Trust's Motion to Strike Affirmative Defenses*

Defendant's fourth affirmative defense is directed against Counts II and III of the complaint for failure of consideration. Defendant cites *Seaboard Surety Co. v. Harbison*, 304 F.2d 247 (7th Cir. 1962) for the proposition that admission of execution of an agreement does not bar a failure of consideration defense. However, in *Seaboard Surety Co.*, defendants admitted they signed the documents, but disputed the veracity of the facts contained within the documents. The Seventh Circuit held that admission of execution did not mean concession of the written provisions as true. *Id*. at 250. Here, Defendant is not arguing that anything contained in the guarantees is untrue or incorrect. Therefore, *Seaboard Surety Co.* is inapposite.

Defendant alternatively asserts that she held no ownership interest in LJH Global or N1LJH at the time the October 2003 Guaranty and the December 2003 Guaranty were executed, and as a result, received nothing of value in exchange for her guarantees. However, the Seventh

Circuit has held that "[i]t is not necessary for a guarantor to derive any benefit from the principal contract or the guarantee for consideration to exist. If the guarantee is made at the time of the principal contract sufficient consideration exists." *First Indiana Bank v. Baker*, 957 F.2d 506, 508 (7th Cir. 1992) (*citing Vanek v. Indiana National Bank*, 540 N.E.2d 81, 84 (Ind.App. 2 Dist. 1989)). Defendant executed the personal guarantees at the time the loans were given to Global and N1LJH, thus it was not necessary for her to derive any personal benefit.

Because the truthfulness of the personal guarantees is not in dispute, and Defendant executed them at the same time the loans were given, failure of consideration is not a claim that can withstand a Rule 12(b)(6) examination. Plaintiff's motion to strike Defendant's fourth affirmative defense is granted.

Defendant argues laches for her fifth affirmative defense, alleging that Counts II and III should be barred because Northern Trust took no action to collect on the notes for almost two years. In order to state a valid claim of laches, Defendant must show that Plaintiff unreasonably delayed the action and caused harm or prejudice to the Defendant. *Martin v. Consultants & Administrators*, 966 F.2d 1078, 1091 (7th Cir. 1992).

Defendant alleges no facts that show why the time period between the notice of default and commencement of this suit constitutes an unreasonable delay. Additionally, Defendant offers only the deterioration of collateral as evidence of prejudice. This District has held that "the defense of impairment of collateral is not available to one who has given an unconditional guaranty of payment." *Istituto Mobiliare Italiano S.p.A. v. Motorola*, 689 F.Supp. 812, 817 (N.D.Ill. 1988). This proposition was affirmed in *F.D.I.C. v. Rayman*, 117 F.3d 994 (7th Cir. 1997) when the Seventh Circuit dismissed defendant's affirmative defense of breach of covenant

of good faith and fair dealing.  In that case, defendant signed a personal guaranty for a land purchase loan and was brought into court because of default almost thirty years later.  Pieces of the land parcel had been sold, and the value of the collateral had declined significantly.  While the Court was sympathetic, it held that:

> "[the] impairment of collateral defense fails because the guaranty he signed is a non-negotiable instrument.  It is well established in Illinois that the . . . impairment of collateral defense is unavailable to a guarantor who exercises a guaranty separate from the underlying contracts, because the guaranty is not a negotiable instrument."

*F.D.I.C. v. Rayman*, 117 F.3d 994, 999 (7th Cir. 1997).

In this case, Defendant argues that the value of the collateral declined during the two-year interval between default on the loans and the instigation of this suit.  Like the notes in *F.D.I.C. v. Rayman*, however, the personal guarantees Defendant signed are non-negotiable instruments.  Because Defendant relies solely on the deterioration of collateral as evidence of prejudice caused by the two-year time period, and because she has not shown that the delay was unreasonable, her fifth affirmative defense of laches is stricken.

Lastly, Plaintiff seeks to strike Defendant's sixth affirmative defense that Northern Trust failed to act in a commercially reasonable manner in seeking collection of the loan payments.  Defendant argues that in the two years that have elapsed since Northern Trust sent notification of default, the financial condition of Global and N1LJH has deteriorated.  She argues that she has been prejudiced by the decline in collateral value.  However, as explained above in the discussion of laches, impairment of collateral pertaining to unconditional guarantees is an unavailing defense.  As this is the basis for Defendant's sixth affirmative defense of breach of covenant of good faith, Plaintiff's motion to strike is granted.

B.  *Northern Trust's Motion to Dismiss Defendant's Counterclaim*

Defendant's counterclaim seeks an accounting from Plaintiff with respect to the Hedges Note and the notes she and her ex-husband personally guaranteed. She asserts that she has no way of knowing what payments may have been made on the loans by Mr. Hedges, Global, or N1LJH. Northern Trust concedes that Defendant would be entitled to setoff rights if other obligors have made payments on the notes but contends that an accounting is improper.

Under Illinois law, a party seeking an accounting "must allege the absence of an adequate remedy at law and either a breach of a fiduciary relationship, a need for discovery, fraud, or the existence of mutual accounts which are of a complex nature." *3Com Corp. v. Electronics Recovery Spec., Inc.*, 104 F.Supp.2d 932, 941 (N.D.Ill. 2000) (*citing ABM Marking Inc. v. Zanasi Fratelli, S.R.L.*, 353 F.3d 541 (7th Cir. 2003)). In this case, Defendant asserts the absence of an adequate remedy at law, and a need for discovery.

Defendant cites *Cumis Ins. Soc., Inc. v. Peters*, in which the court held that an adequate legal remedy was lacking where defendants were in exclusive control of documents needed to determine the amount of money owed plaintiff. *Cumis Ins. Soc., Inc. v. Peters*, 983 F.Supp. 787, 797 (N.D.Ill. 1997). Significantly, however, the party seeking an accounting in *Cumis* had the burden of proving damages. Here, Northern Trust, not Lund Hedges, bears the burden of proving damages. Thus, the rationale for ordering an accounting in *Cumis* does not apply here.

The adequate and obvious legal remedy available to Defendant is discovery, as explained by this District in *Turtle Wax, Inc. v. Zymol Enterprises, Inc.*, 2006 WL 335797 (N.D.Ill. 2006). In that case, the court dismissed defendant's counterclaim for an accounting, noting that "[a]ll of the accounting information that was discoverable in relation to [the accounting claim] remains

7

discoverable . . . . In other words, the accounting claim was superfluous." *Id.* In this case, Defendant can make discovery requests regarding information about any payments Mr. Hedges or his companies made that may affect her obligation to Northern Trust. Therefore, her counterclaim for an accounting is superfluous.

While it is true that discovery is not always a substitute for an accounting, the exceptions are cases in which fraud or a breach of fiduciary duty are alleged. *See Cement-Lock v. Gas Technology Institute*, 523 F.Supp.2d 827 (N.D.Ill. 2007). In *Cement-Lock*, the complex and possibly corrupt nature of the relationships between the parties was reason to believe that normal discovery would not be sufficient. Here, Defendant asserts no such allegations, and offers no compelling reason why discovery would be an inadequate means of obtaining the information. Plaintiff's motion to dismiss Defendant's counterclaim is granted.

  C. *Third-Party Defendants' Motion to Dismiss Defendant's Third-Party Complaint*

Defendant's Third-Party complaint contains three counts: Count I asserts a claim against her ex-husband for joint and several liability pertaining to obligations under the Hedges Note; Counts II and III are against Mr. Hedges and his two companies, Global and N1LJH, for contribution and indemnification related to the personal guarantees. Third-Party Defendants' motion to dismiss these counts is granted as it relates to Global and N1LJH, and denied as it relates to Mr. Hedges.

The parties here dispute the applicability of the domestic relations exception to federal jurisdiction in the present case. The domestic relations exception to federal jurisdiction "divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). The Seventh Circuit has held that the domestic relations

exception encompasses "ancillary proceedings, such as a suit for the collection of unpaid alimony, that state law would require be litigated as a tail to the original domestic relations proceeding." *Friedlander v. Friedlander*, 149 F.3d 739, 740 (7th Cir. 1998). The domestic relations exception is *not* applicable when a party merely attempts to enforce a state court-obtained divorce decree in federal court as part of a separate suit. Explaining *Barber v. Barber*, 62 U.S. 582 (1858), one of the first cases to recognize the domestic relations exception, the *Ankenbrandt* court stated "[t]he holding of the case itself sanctioned the exercise of federal jurisdiction over the enforcement of an alimony decree that had been properly obtained in a state court of competent jurisdiction." *Ankenbrandt*, 504 U.S. at 702 (1992).

At its core, the issue here is whether Defendant is attempting to modify the Divorce Judgment issued by the Florida Court, or merely seeking to enforce it. Defendant alleges that she is simply seeking to have the Divorce Judgment enforced as part of this proceeding. She asserts that Mr. Hedges is liable for half of the obligation to Northern Trust under the Hedges Note, and that she is entitled to indemnification from primary obligors Global and N1LJH for the personal guarantees she executed. This calculation would make Ms. Hedges liable for approximately $2,533,870, or one-half of the Hedges Note. However, the Divorce Judgment essentially removed Global and N1LJH from the picture. Section 33 of the Divorce Judgment states "[t]he parties shall equally divide the debt in the approximate amount of $8,500,000 to Northern Trust." Divorce Judgment at 16, ¶ 33. By this calculation, Defendant is liable for approximately $4,250,000.

Defendant cannot seek indemnification from Global or N1LJH, as doing so would serve to modify the Divorce Judgment issued by the Florida Court. This is prohibited by the domestic

9

relations exception to federal jurisdiction.  Defendant is, however, entitled, on her pleading, to try to obtain contribution from Mr. Hedges for his half of the liability under the Hedges Note and both personal guarantees.  Third-Party Defendants' motion to dismiss the third-party claim is granted with respect to Global and N1LJH, and denied with respect to Mr. Hedges.

## V.     Conclusion

For the reasons stated above, Plaintiff's motion to strike affirmative defenses four, five, and six is granted.  Additionally, Plaintiff's motion to dismiss Defendant's counterclaim for an accounting is also granted.  Third-Party Defendants' motion to dismiss Defendant's third-party complaint is granted insofar as it names Global and N1LJH as parties, but denied with respect to Third-Party Defendant James R. Hedges IV.

ENTER:

*James B. Zagel*
_____
James B. Zagel
United States District Judge

DATE: July 24, 2008